**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALIN DUMITRASCU,<br><br>*Plaintiff*,<br><br>v.<br><br>VIOLETA DUMITRASCU, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-2605 (SLS)<br><br>Judge Sparkle L. Sooknanan |

**<u>MEMORANDUM OPINION</u>**

In this case, Alin Dumitrascu sues Violeta Dumitrascu and other defendants seeking relief related to the custody of their child. This is not the first lawsuit between the Dumitrascus. In 2021, Ms. Dumitrascu, a Romanian citizen, sued Mr. Dumitrascu, a United States citizen, pursuant to the Hague Convention on the Civil Aspects of Child Abduction and its implementing statute. *See Dumitrascu ex rel. A.M.B.D. v. Dumitrascu*, No. 21-cv-1813, 2021 WL 4197378 (D. Colo. Sep. 15, 2021), *aff'd*, No. 21-1341, 2022 WL 1529624 (10th Cir. May 16, 2022). In that action, a federal court in Colorado concluded that Mr. Dumitrascu had wrongfully retained his and Ms. Dumitrascu's child in the United States, and the court ordered the child's return to Romania. *Id.* at \*11, \*14. In this action, Mr. Dumitrascu brings claims against Ms. Dumitrascu and other defendants who he believes were involved in that court-ordered return. Ms. Dumitrascu and the United States have moved to dismiss Mr. Dumitrascu's Complaint on various grounds. Mr. Dumitrascu has also filed several motions. The Court recognizes that Mr. Dumitrascu is understandably upset that a court ordered his daughter's return to Romania. But that does not mean that this Court is a proper forum for him to raise grievances about that dispute. For the reasons

below, the Court grants the Defendants' motions and dismisses Mr. Dumitrascu's claims against Ms. Dumitrascu, the Department of State, and the Ministry of Justice of Romania.

## BACKGROUND

The Court draws the facts, accepted as true, from Mr. Dumitrascu's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). The Court also takes "judicial notice of public records from other court proceedings." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011). Because Mr. Dumitrascu is proceeding pro se, the Court considers the Complaint "in light of all filings, including filings responsive to [the] motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (cleaned up).

Mr. and Ms. Dumitrascu married in Romania in 2015 and moved to Colorado in 2016. *Dumitrascu*, 2021 WL 4197378, at *1. They traveled to Romania in 2019, and Ms. Dumitrascu gave birth to their daughter, A.M.B.D., there that year. *Id.* In early 2020, Ms. Dumitrascu agreed that Mr. Dumitrascu could return to the United States with A.M.B.D. until December 31, 2020, while Ms. Dumitrascu remained in Romania. *Id.* at *2. In July 2020, Mr. Dumitrascu took A.M.B.D. to the United States. *Id.* at *3.

However, Mr. Dumitrascu did not return A.M.B.D. to Romania by December 2020. *Id.* Accordingly, Ms. Dumitrascu "filed an application with Romanian authorities" in January 2021 "to secure A.M.B.D.'s return" to Romania. *Id.* That July, she filed a petition in the United States District Court for the District of Colorado under 22 U.S.C. § 9001 *et seq.*, and the Hague Convention on the Civil Aspects of Child Abduction. *Id.* at *1, *3. After holding an evidentiary hearing, the court concluded that Romania was A.M.B.D.'s habitual residence and that Mr. Dumitrascu had violated Ms. Dumitrascu's custody rights under Romanian law by retaining their daughter in the United States after December 31, 2020. *Id.* at *9–10. After rejecting

Mr. Dumitrascu's defenses, the court granted Ms. Dumitrascu's petition and ordered A.M.B.D.'s return to Romania. *Id.* at *11–14. Mr. Dumitrascu appealed, and the Tenth Circuit affirmed. *See Dumitrascu*, 2022 WL 1529624, at *1.

In August 2025, Mr. Dumitrascu initiated this action. He alleges that the proceedings before the District of Colorado were defective, and that the court improperly ordered A.M.B.D.'s return to Romania. Compl. at 1, ECF No. 1. He also alleges that since A.M.B.D.'s return, Ms. Dumitrascu has mistreated A.M.B.D. and failed to comply with visitation orders. *Id.* And he accuses the Ministry of Justice of Romania of misconduct for its role in securing A.M.B.D.'s return to Romania. *Id.* Mr. Dumitrascu attached several exhibits to his Complaint, many of which are accompanied by cover sheets elaborating on the alleged harm sustained by A.M.B.D. and the defects in the District of Colorado proceedings. *See* ECF No. 1-1 at 4–5. Ultimately, Mr. Dumitrascu requests that this Court prohibit "any further enforcement or recognition of the Romanian return order," "[g]rant interim custody and safeguarding of" A.M.B.D., "[o]rder that [A.M.B.D.] be removed from her mother's care and placed under immediate protective care in the United States," and, if necessary, "[a]ppoint a Guardian Ad Litem or Independent attorney" for A.M.B.D. Compl. at 2 (boldface omitted).

It is difficult to discern the nature of Mr. Dumitrascu's claims—or even whom he intended to be defendants—from his Complaint. The Complaint has no heading identifying any defendants, nor does it have a section naming the parties to this litigation. *See* Compl. at 1–2. But a page titled "Certificate of Service (Ex Parte)" attached to the Complaint has a heading naming Ms. Dumitrascu as a "Respondent." Compl. at 4. And the Civil Cover Sheet that Mr. Dumitrascu completed identifies no defendant but lists as attorneys for the defendant Habib Nasrullah, Kelsey Johnson, "U.S. Department of State," and "Mini[s]try of Justice of Romania." ECF No. 1-4. On

that Cover Sheet, as his causes of action, Mr. Dumitrascu wrote "22 U.S.C. § 9001; 28 U.S.C.[ ]§[ ]1331," and described his cause as "Hague Convention Violation & Unlawful[] Removal of U.S.[ ]Citizen Child." *Id.*[1] Mr. Dumitrascu's contemporaneously filed Emergency Motion for Temporary Restraining Order provides no further clarity about the nature of his claims. ECF No. 2 at 1. That motion identifies as "Defendants": Ms. Dumitrascu, Habib Nasrullah, Kelsey Johnson, the United States Department of State, and the Ministry of Justice of Romania. *Id.*

As this case has progressed, Mr. Dumitrascu has filed several motions. Among them is a Motion for Leave to File Amended Complaint. ECF No. 32. The Proposed Amended Complaint identifies as defendants Ms. Dumitrascu and the Department of State. Proposed Am. Compl. at 1, ECF No. 32-1. It then states: "Additional defendants, including private attorneys and foreign officials, were previously named in this action as reflected in the original Complaint; Plaintiff does not add new defendants in this Amended Complaint." *Id.* The Proposed Amended Complaint also seeks to "add a distinct claim under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003, against Defendant Violeta Dumitrascu." *Id.* In addition to the ICARA claim, the Proposed Amended Complaint lists as "Count I": "Existing claims (unchanged) (as pleaded in the operative Complaint in this action)." *Id.* at 3. It elaborates that Mr. Dumitrascu "re-alleges the claims previously asserted in his original Complaint as to the Department of State and other defendants . . . and does not expand those theories in this Amended Complaint." *Id.*

Ms. Dumitrascu and the Department of State have each filed motions to dismiss, which are fully briefed and ripe for review. *See* Dumitrascu Mot. Dismiss, ECF No. 18; Dumitrascu Mot.

---

[1] The Court references the Civil Cover Sheet only to highlight the lack of clarity in Mr. Dumitrascu's filings. *See Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers.").

Opp'n, ECF No. 21; U.S. Mot. Dismiss, ECF No. 17; U.S. Mot. Opp'n, ECF No. 22; U.S. Mot. Reply, ECF No. 28. Ms. Dumitrascu argues that Mr. Dumitrascu's claims against her must be dismissed under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Dumitrascu Mot. Dismiss 1. The United States seeks dismissal under Rule 12(b)(6). U.S. Mot. Dismiss 1. Mr. Dumitrascu has also filed several motions. Am. Emergency Mot. TRO & Injunctive Relief, ECF No. 23; Mot. Leave File Am. Compl., ECF No. 32; Mot. Leave File Notice & Exs., ECF No. 33; Mot. Entry Default, ECF No. 38.

## LEGAL STANDARD

"When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims." *Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 12 (D.D.C. 2023) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then citing *U.S. Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000)). And "[b]ecause the court may not address the plaintiff's claims without subject-matter jurisdiction, a motion to dismiss under Rule 12(b)(1) [also] imposes an affirmative obligation on the court to ensure that jurisdiction is proper." *Himex Co. v. United States*, 17 F. Supp. 3d 77, 79 (D.D.C. 2014). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

When a party moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). Although a court must resolve factual discrepancies in the plaintiff's favor, *id.*, the plaintiff "must allege specific acts connecting [the] defendant with the forum" and "cannot rely on conclusory

allegations" alone, *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012) (alteration in original) (quoting *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). A court also "need not treat all of [a] plaintiff['s] allegations as true, and instead 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'" *Id.* (quoting *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)).

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A *pro se* complaint is to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

### A.  Motions to Dismiss

The Court begins by addressing the motions to dismiss filed by Ms. Dumitrascu and the Department of State.

### 1.    Ms. Dumitrascu

Ms. Dumitrascu moves to dismiss Mr. Dumitrascu's claims against her pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Because Mr. Dumitrascu has failed to demonstrate that this Court has personal jurisdiction over Ms. Dumitrascu, it grants her motion under Rule 12(b)(2) and declines to address her other bases for dismissal. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

"Lawsuits require personal jurisdiction" so that the Court may "exercise coercive authority over a defendant." *Gu v. Trump*, No. 25-cv-460, 2025 WL 3684896, at *2 (D.D.C. Dec. 19, 2025) (cleaned up). "Personal jurisdiction can be established in three ways. First, so-called specific jurisdiction permits suits that arise out of or relate to a defendant's activities in the forum state. Second, general jurisdiction allows the Court to hear the suit when a defendant is essentially at home in the State. Third, express or implied consent can serve as a ground for personal jurisdiction as well." *Id.* (cleaned up).

Here, Mr. Dumitrascu provides no indication that Ms. Dumitrascu should be considered at home in this District, nor that she has consented to suit here. What remains is specific jurisdiction. Assessing whether a court has specific jurisdiction over a non-resident defendant "typically implicates a state's jurisdictional statute or rule." *Canuto v. Mattis*, 273 F. Supp. 3d 127, 138 (D.D.C. 2017) (quoting *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 21 (D.D.C. 2014)). "[A] court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process.'" *Gu*, 2025 WL 3684896, at *3 (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).

Mr. Dumitrascu's claims against Ms. Dumitrascu "falter[] at the first step: D.C. law." *Id.* (alteration in original) (quoting *Nwosu*, 2024 WL 1050339, at \*1).

D.C. law permits courts to:

exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7) marital or parent and child relationship in the District of Columbia [in specified circumstances.]

D.C. Code § 13–423. None of Mr. Dumitrascu's filings indicate that Ms. Dumitrascu's relevant conduct falls under any of these bases of jurisdiction. Mr. Dumitrascu alleges that Ms. Dumitrascu obtained a defective favorable ruling from the District of Colorado and has mistreated their daughter. Compl. at 1–2. But those alleged occurrences have no connection to the District of Columbia.

Mr. Dumitrascu argues that this Court has specific jurisdiction over Ms. Dumitrascu because her prior residence in the United States and participation in proceedings in the District of Colorado demonstrate that she intentionally directed conduct "toward the United States and toward [Mr. Dumitrascu] and the minor U.S. citizen child." Dumitrascu Mot. Opp'n 4–5. Yet directing conduct toward the United States as a whole is different from directing it toward the District of

Columbia. And D.C. law—which in this circumstance provides the rule for the specific jurisdiction of this Court—requires contacts with the District of Columbia. *See Canuto*, 273 F. Supp. 3d at 138; *see also* Fed. R. Civ. P. 4(k)(1) ("Serving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").[2]

Accordingly, Mr. Dumitrascu has failed to carry his burden to establish a basis for this Court to exercise jurisdiction over his claims against Ms. Dumitrascu. Those claims must be dismissed.

### 2.    Department of State

The Department of State moves to dismiss Mr. Dumitrascu's claims against it under Federal Rule of Civil Procedure 12(b)(6). It initially argued that Mr. Dumitrascu's Complaint failed to comply with Federal Rule of Civil Procedure 8 because, among other things, it failed to allege any conduct by the Department. U.S. Mot. Dismiss 2–3. But after Mr. Dumitrascu filed further documents elaborating on his view of the Department's relevant conduct, the Department pointed out in its Reply that Mr. Dumitrascu lacks standing. U.S. Mot. Reply 4–5. Because "standing goes to subject matter jurisdiction over the case, the Court has 'an affirmative obligation to ensure'" that Mr. Dumitrascu has standing to press his claims against the Department. *Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 44 (D.D.C. 2023) (quoting *Smallwood v. DOJ*, 266 F. Supp. 3d 217, 219 (D.D.C. 2017)); *see also Alter v. United States*, No. 25-cv-2573, 2026 WL 879289, at *1

---

[2] It is true that when a claim "arises under federal law," this Court may also exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). But Mr. Dumitrascu does not argue that this is such a case, and in any event, it appears that Colorado's courts of general jurisdiction could exercise personal jurisdiction over his claims against Ms. Dumitrascu.

n.1 (D.D.C. Mar. 30, 2026) (construing a Rule 12(b)(6) motion by the United States as a motion under Rule 12(b)(1) because the United States' arguments sounded in standing).

For a court to have subject-matter jurisdiction over a plaintiff's claim, the plaintiff must demonstrate that he has standing—that he has "suffered an injury in fact, fairly traceable to the challenged action of the defendant, and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable judicial decision." *Brundage v. Kennedy*, No. 25-cv-119, 2025 WL 2761634, at *3 (D.D.C. Sep. 29, 2025) (cleaned up).

Mr. Dumitrascu's allegations regarding the Department are unclear. His initial Complaint does not allege any conduct by the Department giving rise to Mr. Dumitrascu's claims. Indeed, it does not mention the Department at all—or even give an indication that he intended to sue the Department. But because Mr. Dumitrascu is proceeding pro se, the Court must also construe the Complaint "'in light of' all filings, including filings responsive to [the] motion to dismiss." *Brown*, 789 F.3d at 152 (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). In opposing the Department's Motion to Dismiss, Mr. Dumitrascu states that his claims against the Department are based on it "accept[ing] and process[ing] a request labeled as a 'Hague return' in the absence of any wrongful removal or wrongful retention of the child, without determining the child's habitual residence, and without verifying the legal validity of the documents transmitted by foreign authorities." U.S. Mot. Opp'n 2 (boldface omitted). He also filed a letter he received from the Department in April 2021, in which a Department employee asks whether Mr. Dumitrascu would be "interested in working with Ms. Violeta Dumitrascu . . . to facilitate the resolution of [his] family's conflict without engaging in litigation." ECF No. 26-1 at 1. The letter goes on to state that if Mr. Dumitrascu elects not to voluntarily resolve the custody dispute, the Department would "be obligated under Article 7(f) of the [Hague] Convention to continue

10

processing the application and to facilitate the initiation of judicial proceedings by Ms. Violeta Dumitrascu." *Id.* at 2. Mr. Dumitrascu adds that this letter "exerted pressure" on him. ECF No. 26 at 1.

Despite filing these documents, Mr. Dumitrascu does not articulate the injury that he believes the Department's conduct inflicted on him. As best the Court can tell, he appears to think that the Department contributed to the District of Colorado's decision to order A.M.B.D.'s return to Romania. Or perhaps he thinks that the "pressure" exerted by the Department's letter itself constitutes an injury sufficient to support standing. But even assuming that either of those injuries are enough, Mr. Dumitrascu's standing is nevertheless lacking because those injuries are not redressable through the relief requested by Mr. Dumitrascu. "To determine whether an injury is redressable, the Court considers the relationship between the judicial relief requested and the injury suffered." *Brundage*, 2025 WL 2761634, at *3 (cleaned up). As mentioned above, Mr. Dumitrascu's Complaint requests that this Court prohibit "any further enforcement or recognition of the Romanian return order," "[g]rant interim custody and safeguarding of" A.M.B.D., "[o]rder that [A.M.B.D.] be removed from her mother's care and placed under immediate protective care in the United States," and, if necessary, "[a]ppoint a Guardian Ad Litem or Independent attorney" for A.M.B.D. Compl. at 2 (boldface omitted). But none of that requested relief appears to pertain to the Department. There is no indication that the Department would properly have any role in the return of A.M.B.D. to the United States should this Court grant Mr. Dumitrascu's requested relief.

At bottom, this lawsuit appears to be one in which Mr. Dumitrascu seeks to relitigate the question of where A.M.B.D. should reside while he and Ms. Dumitrascu resolve their custody dispute. The Court understands that Mr. Dumitrascu is upset that the Department of State, in

discharging its responsibilities under the Hague Convention, sent him the April 2021 letter. But based on the allegations in Mr. Dumitrascu's filings, the Department of State has at most a tangential relationship to the underlying custody issue at the core of this dispute. Mr. Dumitrascu therefore lacks standing to bring his claims against the Department, and they must be dismissed.[3]

### B.    Motion to Amend

Mr. Dumitrascu has moved for leave to file an amended complaint. Unless a party is entitled to amend their complaint as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). That means that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be freely given." *Harris v. Koenig*, 673 F. Supp. 2d 8, 11 (D.D.C. 2009) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But a "district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga*, 677 F.3d at 480.

As described above, the only claim added in Mr. Dumitrascu's Proposed Amended Complaint is an ICARA claim against Ms. Dumitrascu. Proposed Am. Compl. at 3. "ICARA

---

[3] Mr. Dumitrascu has also filed a Motion for Leave to File Notice and Exhibits, ECF No. 33. He seeks leave to file a number of documents in support of his view that the Department acted improperly in relation to the proceeding in the District of Colorado. The Department opposes Mr. Dumitrascu's request, arguing that the submission would constitute an impermissible sur-reply. U.S. Am. Compl. Opp'n 3, ECF No. 35. The Court has reviewed the documents provided by Mr. Dumitrascu, and nothing in them changes its conclusion that Mr. Dumitrascu lacks standing to bring his claims against the Department. Accordingly, the Court will grant Mr. Dumitrascu's request for leave to file these documents.

permits a parent . . . seeking relief under the [Hague] Convention to file a petition for return of a child in state or federal court . . . and directs courts to 'decide the[se] case[s] in accordance with the Convention.'" *Golan v. Saada*, 596 U.S. 666, 671 (2022) (quoting 22 U.S.C. § 9003(d)). But a petitioner seeking to initiate an ICARA action does so "by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(b); *see also Flores Perla v. Perla Velasquez*, No. 16-cv-95, 2016 WL 3878495, at *4–5 (D. Md. July 18, 2016) (collecting cases concluding that an ICARA action can be brought only "where the child is located at the time of filing"). Here, A.M.B.D. has been located in Romania throughout this action. Thus, ICARA would not permit this Court to adjudicate Mr. Dumitrascu's proposed claim against Ms. Dumitrascu, and consequently, Mr. Dumitrascu's claim would not survive a motion to dismiss. The Court must therefore deny Mr. Dumitrascu's motion as futile.

## C.    Ministry of Justice of Romania

Finally, Mr. Dumitrascu has filed a motion seeking that the Clerk of the Court enter default against the Ministry of Justice of Romania under Federal Rule of Civil Procedure 55. The Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, "affords the 'sole basis for obtaining jurisdiction over a foreign state' in United States courts." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 690 (D.C. Cir. 2022) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)); *see* 28 U.S.C. § 1603(a) (providing that a foreign state "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state"). The FSIA both "establishes the general rule for granting foreign sovereign immunity . . . and it also makes that grant of immunity subject to nine exceptions." *Wye Oak Tech.*, 24 F.4th at 690.

Significantly, those exceptions "are exhaustive; if none applies to the circumstances presented in a case, the foreign state has immunity and the court lacks subject-matter jurisdiction." *Id.*

This Court has an "'affirmative obligation' to determine whether it has subject-matter jurisdiction" over the Plaintiff's claims against the Ministry of Justice of Romania. *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 61 (D.D.C. 2013) (quoting *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)). Accordingly, the Court directed Mr. Dumitrascu to file a memorandum explaining why this Court has subject-matter jurisdiction to hear his claims against the Ministry of Justice of Romania under the FSIA. *See* Min. Order (Apr. 24, 2026). In his memorandum, Mr. Dumitrascu contends that his claims fall within 28 U.S.C. § 1605(a)(2), also known as the "commercial activities exception." Suppl. Mem. at 3–4, ECF No. 39; *see Wye Oak Tech.*, 24 F.4th at 689. The Court is not convinced.

The commercial activities exception directs that a foreign state is not immune in a case "in which the action is based upon a commercial activity" with certain connections to the United States. 28 U.S.C. § 1605(a)(2). Here, Mr. Dumitrascu's claims against the Ministry of Justice of Romania are not based on any alleged commercial activity. As Mr. Dumitrascu himself describes his claims, they are "based on the Ministry's case-specific operational conduct" related to the District of Colorado proceeding, including "the use of U.S. governmental channels, the triggering and reinforcement of a Hague-return proceeding in the United States, and direct consequences for the legal position and settled U.S.-based life of a U.S.-citizen child and her father." Suppl. Mem. at 3–4. But none of these alleged acts are *commercial* activities. *See Wye Oak Tech.*, 24 F.4th at 691 ("[T]he FSIA's commercial activities exception carves out, and exempts from sovereign immunity, a sphere of private commercial action that foreign states sometimes undertake.");

28 U.S.C. § 1603(d) ("A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction.").

Thus, Mr. Dumitrascu has not carried his burden of showing that the Court has jurisdiction to hear his claims against the Ministry of Justice of Romania. The Court must dismiss those claims for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 233 (2025) ("In order for subject-matter jurisdiction to exist under the FSIA, an exception to immunity must apply.").

\*     \*     \*

The Court understands that Mr. Dumitrascu disagrees with the District of Colorado's decision to order his daughter's return to Romania. Yet that does not mean that this Court provides a proper forum for Mr. Dumitrascu to relitigate that dispute, or to raise other grievances with the people and entities involved. His claims against Ms. Dumitrascu, the Department of State, and the Ministry of Justice of Romania must be dismissed.[4]

**CONCLUSION**

For all these reasons, the Court grants the Department of State's Motion to Dismiss, ECF No. 17, as well as Ms. Dumitrascu's Motion to Dismiss, ECF No. 18. The Court denies as moot Mr. Dumitrascu's Amended Emergency Motion for Temporary Restraining Order and

---

[4] As discussed above, it is difficult to understand whether Mr. Dumitrascu intended to bring claims against defendants other than Ms. Dumitrascu, the Department of State, and the Ministry of Justice of Romania. A heading of an early filing by Mr. Dumitrascu in this case also lists as defendants Habib Nasrullah and Kelsey Johnson. ECF No. 2 at 1. And the Proposed Amended Complaint mentions that "[a]dditional defendants, including private attorneys . . . , were previously named in this action." Proposed Am. Compl. at 1, ECF No. 32-1. Yet Mr. Dumitrascu has not filed proof that he served any other defendants. Thus, to the extent that Mr. Dumitrascu intended for his Complaint to bring claims against Mr. Nasrullah or Ms. Johnson, the Court orders him to file proof that he served those defendants in accordance with Federal Rule of Civil Procedure 4 by June 15, 2026.

Injunctive Relief, ECF No. 23, and his Request for Clerk's Entry of Default Against Defendant

Ministry of Justice of Romania, ECF No. 38. The Court denies Mr. Dumitrascu's Motion for

Leave to File Amended Complaint, ECF No. 32. The Court grants Mr. Dumitrascu's Motion for

Leave to File Notice and Exhibits, ECF No. 33, and will treat the attached documents,

ECF Nos. 33-1 & 33-2, as filed.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    May 22, 2026

16